[Cite as *Simmons v. Slavings*, 2012-Ohio-538.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

LINDA SIMMONS

    Appellant

    v.

CHRISTOPHER SLAVINGS

    Appellee

C.A. No.      10CA0042

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    CVI-10-04-0193

DECISION AND JOURNAL ENTRY

Dated: February 13, 2012

---

CARR, Judge.

{¶1}   Appellant, Linda Simmons, appeals the judgment of the Wayne County Municipal Court, Small Claims Division.  This Court affirms.

I.

{¶2}   Ms. Simmons filed a complaint against her nephew Christopher Slavings for money he allegedly owed her for a truck she sold him and for storage of some items on her property.  The matter was heard before the magistrate who recommended judgment in favor of Ms. Simmons in the amount of $2000.00 for the truck, but in favor of Mr. Slavings in regard to the storage charges.  Ms. Simmons filed objections to the magistrate's decision.  The trial court overruled the objections and adopted the magistrate's decision.  The trial court entered judgment in favor of Ms. Simmons in the amount of $2000.00 for the truck, but concluded that Ms. Simmons had not met her burden of proof in regard to her claim for money owed for storage fees. The trial court assessed costs to Mr. Slavings.  Ms. Simmons appealed.

II.

**{¶3}** Ms. Simmons raises four issues on appeal. Notwithstanding the decision issued by the magistrate, "[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." *Trammell v. McCortney*, 9th Dist. No. 25840, 2011-Ohio-6598, at ¶ 4, quoting *Mealey v. Mealey*, 9th Dist. No. 95CA0093, 1996 WL 233491 (May 8, 1996).

**{¶4}** This Court construes Ms. Simmons' first issue as an argument that the trial court's judgment in favor of Mr. Slavings on her claim for storage fees was against the manifest weight of the evidence. This Court disagrees.

**{¶5}** In determining whether the trial court's decision is or is not supported by the manifest weight of the evidence, this Court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." The Ohio Supreme Court has clarified that:

> when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). This presumption arises because the trial judge had the opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' *Id*. at 80. 'A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' *Id*. at 81.

*State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24.

{¶6} Ms. Simmons' claim for storage fees constituted a claim for breach of contract. To prevail on her claim alleging a breach of contract, Ms. Simmons must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Kunkle v. Akron Mgt. Corp.*, 9th Dist. No. 22511, 2005-Ohio-5185, at ¶ 18, quoting *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (2d Dist.1994).

{¶7} At trial, Ms. Simmons testified that Mr. Slavings had asked if he could store his "four-wheeler" in her garage for a short period of time. She testified that her nephew told her he was going through a divorce and he did not want his wife to take the vehicle. Ms. Simmons testified that Mr. Slavings knew that she would need to reclaim that storage space in the winter for her own farm equipment, vehicles, and boats. She did not testify that the parties had agreed that Mr. Slavings would compensate her for the right to temporarily store his vehicle on her property. In fact, the reasonable inference was that Ms. Simmons was doing her nephew a favor by allowing him to store the four-wheeler in her garage.

{¶8} Ms. Simmons testified that, after she sold a truck to Mr. Slavings and Mr. Slavings failed to make the agreed payments and return her telephone calls, she sent him a letter in early January 2010, in which she informed him that she would be charging him $10 per day per item stored, effective January 14, 2010. Her letter, which was admitted into evidence, referenced a "4-Wheeler and accessories," as well as a request that Mr. Slavings remove "the other things also, that you have left here." She testified that those "other things" included Mr. Slavings' son's pellet gun and Mr. Slavings' father's power saw. Significantly, Ms. Simmons testified that the parties did not have any prior agreement regarding payment for storage. She testified merely that she sent her nephew a registered letter regarding how much she was going to

begin charging him if he failed to remove the items. Ms. Simmons testified that Mr. Slavings arrived at her property with a deputy sheriff on April 14, 2010, and removed his items.

{¶9} Mr. Slavings testified that he and Ms. Simmons had a verbal agreement that he could store some items in her garage in exchange for his performing work on her property. He testified that he performed his side of the agreement by cutting down trees and mowing the grass on her property "many times." Mr. Slavings testified that Ms. Simmons never clarified when they first made their agreement that he could only store his property during the summer. He further testified that he originally brought his four-wheeler to his aunt's property to ride it there, not because he was in the process of a divorce.

{¶10} Mr. Slavings admitted that, when he received Ms. Simmons' letter, it was obvious that she no longer wanted his property in her garage. He testified that he was not able to remove his property until he was able to bring a deputy to help him. Mr. Slavings denied knowing anyone who had a truck and could have helped him any earlier.

{¶11} Mr. Slavings' sister, Valerie Tanner, testified that her brother asked her then-husband at least three to four times a week to help him remove his belongings from Ms. Simmons' property. Ms. Tanner testified that, although her husband had a truck and trailer, he refused to help because he did not want to get involved with Ms. Simmons.

{¶12} On rebuttal, Ms. Simmons testified that her nephew's former boss has a truck and that other people at that business drive trucks. Ms. Tanner earlier testified that the relationship between Mr. Slavings and his former boss was not good and that others at that business only drove company trucks.

{¶13} Based on our review of the record, there was competent, credible evidence to support the trial court's conclusion that Ms. Simmons failed to meet her burden of proof to

establish that the parties had an agreement that Mr. Slavings would pay to store his belongings on Ms. Simmons' property and that Mr. Slavings breached that agreement. Ms. Simmons admitted that the parties did not have any agreement for payment when she first allowed Mr. Slavings to store some items in her garage. In fact, the evidence supports the reasonable inference that Ms. Simmons allowed her nephew to store items as a favor. Only after Mr. Slavings failed to pay for the truck he bought from her did Ms. Simmons send him a letter indicating that she would start charging him a storage fee. By contrast, Mr. Slavings testified that, from the inception, the parties had a verbal agreement that he could store his items in exchange for his performing work on Ms. Simmons' property. He testified that he performed all work required pursuant to the parties' agreement.

{¶14} If Ms. Simmons' testimony is to be believed, her January 2010 letter to Mr. Slavings constituted an offer to store his belongings in exchange for $10.00 per item per day. There was no evidence presented to indicate that Mr. Slavings accepted her offer. It is well established that, as a general rule, an offeree's silence does not constitute acceptance of an offer. *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 152 (1978). Moreover, while beginning or rendering performance may manifest assent, *Complete Auto Auction v. Automotive Fin. Corp.*, 9th Dist. No. 18450, 1998 WL 312523 (June 10, 1998), there was no evidence to show that Mr. Slavings began performing. He did not move his belongings into Ms. Simmons' garage after becoming aware of the storage fees, nor did he pay her. His belongings were already being stored under conditions that Ms. Simmons described in her testimony as gratuitous, or, if Mr. Slavings' testimony was believed, pursuant to an already existing agreement. This Court has further recognized that "a failure to act may constitute a manifestation of assent." *Id*. However, there was competent, credible evidence to demonstrate

that, despite his repeated efforts to obtain help, Mr. Slavings had no ability to remove his four-wheeler and that the other items did not belong to him.

{¶15} If Mr. Slavings' testimony is to be believed, the parties had a storage agreement and he complied with the terms of that agreement. Ms. Simmons' letter would have then constituted an attempt to modify the parties' agreement. "'A contract cannot be unilaterally modified. In order to modify a contract, the parties to that contract must mutually consent to the modification.'" *Fraher Transit, Inc. v. Aldi, Inc.*, 9th Dist. No. 24133, 2009-Ohio-336, at ¶ 12, quoting *Nagle v. Heating & Air Conditioning Co. v. Heskett*, 66 Ohio App.3d 547, 550 (4th Dist. 1990). Ms. Simmons presented no evidence to demonstrate that Mr. Slavings consented to the proposed modification of terms.

{¶16} The trial court was in the best position to judge the credibility of the witnesses. *Seasons Coal Co., Inc.*, 10 Ohio St.3d 77 at 80. Regardless of which party the trial court found to be more credible, there was competent, credible evidence to support the trial court's conclusion that Ms. Simmons failed to meet her burden of proving her claim for breach of contract regarding the issue of storage.

{¶17} To the extent that Ms. Simmons speculates regarding the identity of the driver who transported Mr. Slavings in a truck to court for trial and asserts that she would have assisted him with her own truck in removing his belongings, these matters are outside the scope of the record and we decline to address them.

{¶18} Second, Ms. Simmons argues that the trial court erred by not allowing her to complete a line of questioning. We construe Ms. Simmons' argument as an assertion that the trial court erred by excluding relevant evidence. This Court concludes that, by failing to object

below, Ms. Simmons has not preserved this issue for appeal. But even if she had preserved the argument for review, she had failed to demonstrate its merit.

{¶19} The trial court enjoys broad discretion regarding the admission or exclusion of evidence, and this Court will not overturn the trial court's ruling absent an abuse of discretion and a showing of material prejudice. *Drew v. Marino*, 9th Dist. No. 21458, 2004-Ohio-1071, at ¶ 8. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Id.*

{¶20} Evid.R. 402 limits the admission of evidence to relevant evidence. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although the Ohio Rules of Evidence are not applicable to proceedings in small claims court, Evid.R. 101(C)(8), the plaintiff must still present reliable evidence to prove her claim. *Yeager v. Krohn*, 6th Dist. No. F-99-007, 1999 WL 961457 (Oct. 22, 1999). It is axiomatic that only evidence relevant to the claim would satisfy the requirement for reliable evidence.

{¶21} On cross-examination of Valerie Tanner, Ms. Simmons asked her whether Mr. Slavings' former boss and other employees of that company had trucks. Ms. Tanner testified that her brother and his former boss were "not on good terms" because the boss owed her brother money. She further testified that the other employees at the company only had access to

company trucks, not personal trucks. At that time, the trial court stated: "Let's kind of move on. This really isn't important in this case, quite candidly. Any other questions?"

**{¶22}** Ms. Simmons does not explain what further testimony she wished to elicit. Assuming she was attempting to show that Mr. Slavings knew someone, somewhere, regardless of how remote or strained the relationship, who had a truck, she has not argued what further evidence she sought to present or how that evidence would prove her allegations that the parties had a storage rental agreement and that Mr. Slavings breached the terms of that agreement by failing to pay. Even if Mr. Slavings had access to a truck at all times after he received Ms. Simmons' letter, that evidence was not relevant to establish the existence of a contract and Mr. Slavings' breach of the payment terms. Accordingly, the trial court did not err in limiting this line of questioning.

**{¶23}** Moreover, Ms. Simmons has not argued that she was materially prejudiced because of the trial court's action. The trial court clearly asked her whether she had any further questions for Ms. Tanner, and Ms. Simmons continued her cross-examination of the witness. In fact, Ms. Simmons' next question followed up on an issue regarding solicitations to use the witness's husband's truck. Accordingly, she was not precluded from continuing with this line of testimony, notwithstanding its irrelevance to her breach of contract claim.

**{¶24}** Ms. Simmons discusses her third issue fully as follows: "New discovery of information and of court transcripts of July 08, 2010, concluding Mr. Slavings untruthfulness can be shown absolute." (sic)

**{¶25}** Ms. Simmons has not moved to supplement the record. Moreover, as any newly discovered information is not part of the trial court record, it cannot be considered on appeal. *Ruf v. Ruf*, 9th Dist. No. 23813, 2008-Ohio-663, at ¶ 6. Any argument regarding newly

discovered evidence which by due diligence could not have been discovered in time to move for a new trial must be addressed by way of a motion for relief from judgment pursuant to Civ.R. 60(B).

{¶26} We construe the remainder of Ms. Simmons' assertion as an argument that the trial court's judgment was against the manifest weight of the evidence because Mr. Slavings' testimony was not credible. This Court has reviewed the trial transcript and fully addressed these issues above. Her argument in this regard is not well taken.

{¶27} Finally, Ms. Simmons asserts that she was never advised or given the opportunity to file a financial affidavit either in the trial court or prior to filing her appeal. She asserts that the filing fees for both cases have caused her a financial hardship.

{¶28} R.C. 1901.26(A)(1)(a) provides for the deposit of a fee in advance of the filing of any new civil action in the municipal court. R.C. 1901.26(A)(7) provides: "The municipal court, as it determines, may refund all deposits and advance payments of fees and costs, including those for jurors and summoning jurors, when they have been paid by the losing party." In this case, the municipal court rendered judgment in favor of Ms. Simmons against Mr. Slavings on part of her claim and assessed costs to Mr. Slavings. Ms. Simmons has not asserted that Mr. Slavings has not paid the assessed costs or that she has been unable to obtain a refund from the municipal court. Moreover, Ms. Simmons has not provided any authority for the proposition that she had the right to have filing fees waived either at the trial court level or on appeal. Her argument is not well taken.

### III.

{¶29} Ms. Simmons' assignments of error are overruled. The judgment of the Wayne County Municipal Court, Small Claims Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

LINDA SIMMONS, pro se, Appellant.

CHRISTOPHER SLAVINGS, pro se, Appellee.